UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ANDREW S COOK, )
　　　　　　　　　　　　　　　　　　　　)
　　　Plaintiff, )
　　　　　　　　　　　　　　　　　　　　)
　　　v. ) Civil No.: 3:13-CV-406
　　　　　　　　　　　　　　　　　　　　) Judge Collier
SL TENNESSEE, LLC , )
　　　　　　　　　　　　　　　　　　　　)
　　　Defendant. )

## **M E M O R A N D U M**

Before the Court is a motion for summary judgment filed by Defendant SL Tennessee, LLC ("Defendant") (Court File No. 11). Plaintiff Andrew Cook ("Plaintiff") responded (Court File No. 13) and Defendant replied (Court File No. 14). Plaintiff was also granted leave to file a surreply (Court File No. 18). For the following reasons, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 11).

**I.　　FACTUAL BACKGROUND[1]**

Plaintiff worked as a quality inspector for Defendant, an auto parts manufacturer. Specifically, Plaintiff worked in Defendant's Chassis Department and was responsible for inspecting parts before shipping. In July 2010, Plaintiff injured his back attempting to lift a box full of parts that had become stuck on a set of rollers. Plaintiff suffered a lumbar strain and was released to work with certain restrictions on the amount of weight he could lift. Initially, he was restricted from lifting anything over ten pounds, but this was later modified to allow him to lift anything up to 20 pounds. He worked with those restrictions and his human resources manager

---

[1] The following summary of the facts is taken from the briefs of the parties. Where facts are in dispute, they are cited to the record.

told him he must not exceed the restrictions.

In May 2011, Plaintiff requested and received FMLA leave due to anger management and anxiety issues. He was out until July 28 and then was out again for several weeks in August, eventually using all 12 weeks of FMLA leave available to him. Plaintiff did not request any additional time off from work for his anxiety and anger management issues after returning to work in August.

In November 2011, Plaintiff attempted to move several boxes weighing approximately 20 pounds, despite being told to ask for assistance, and reinjured his back. The examining doctor again found no structural damage and sent him back to work with the same restrictions as before. In 2011, Plaintiff's supervisors met with him to discuss absences for which he had not received a doctor's excuse. The supervisors made sure that his restrictions were being followed but informed Plaintiff that further unexcused absences would be addressed under Defendant's general attendance policy. Early in 2012, Plaintiff passed out twice at work due to seizures—his absences due to these seizures were accommodated by Defendant.

Unbeknownst to Defendant, at some point during spring 2012, Plaintiff began having suicidal thoughts. On July 31, 2012, just before 8 A.M., Plaintiff called Melissa Jennings, Plaintiff's team lead, and told her that he was at the emergency room because his leg had given out on him. Plaintiff told her that he could not take the pain anymore and he had a gun and was going to end it all (Court File No. 12-1, Pl. Dep. p. 135, Court File No. 12-32, Jennings Dep. p. 19). Jennings told him not to do anything stupid and tried to remind him that he had a family who depended on him. After Plaintiff hung up the phone, Jennings reached out to several of her superiors to try to figure out how to respond to the situation. One of these superiors, Marcus Green, called Plaintiff and spoke to him briefly. According to Green's recollection, Plaintiff

stated several times that he could not take it anymore and he would not be returning to work (Court File No. 12-33, Green Dep. p. 16). Green was left with the impression that Plaintiff was quitting his job due to his inability to cope with the continued pain (*id.*).[2] Subsequent to these conversations, Defendant processed Plaintiff's termination as a "voluntary quit."

The next day, Plaintiff's live-in girlfriend Nancy Gilson called Jennings and told her that she had been trying to reach Sharon Tackett, Defendant's Human Resources Manager about getting some paperwork. Jennings emailed Tackett to let her know about the call, but before Tackett could call Gilson back, Gilson called Tackett. (Court File No. 12-19, Tackett Dep. p. 60, Court File No. 12-35, Gilson Dep. p. 17). Gilson requested paperwork from Tackett for the doctor to sign showing that he needed to be out of work (*id.*). Tackett responded that Plaintiff had quit the day before (*id.*). Gilson said ok and hung up the phone (*id.*). Gilson stated and Plaintiff admits that Gilson told him that Tackett had informed her that Plaintiff quit his job (Court File No. 12-35, Gilson Dep. p. 17, Court File No. 12-1, Pl. Dep. 154). It is undisputed that neither Plaintiff nor Gilson contacted Defendant to dispute this claim after this conversation.[3]

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact

---

[2] Plaintiff's testimony at his deposition does not contradict Green's recollection of the words used in the conversation (Court File No. 12-1, Pl. Dep., p. 138), although Plaintiff does argue in his brief that his comments during both calls manifested an intention to commit suicide not quit his job (Court File No. 17, Pl.'s resp. p. 6).

[3] Plaintiff settled his worker's compensation claim with Defendant in early September 2012.

3

exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**III. ANALYSIS**

Plaintiff asserts claims for interference with his rights under the Family and Medical

4

Leave Act (FMLA) and retaliatory discharge in violation of Tennessee's worker's compensation law.  Defendant moves for summary judgment on both of these claims.  As to the FMLA claim Defendant argues that Plaintiff voluntarily quit before he requested FMLA leave and thus is not an eligible employee under the FMLA.  As to the retaliatory discharge claim, Defendant argues that because Plaintiff voluntarily quit Defendant could not have discharged him.

The Sixth Circuit Court of Appeals acknowledges two theories of recovery under the FMLA: interference and retaliation.  *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507–08 (6th Cir. 2006).  The interference theory recognizes employers may not "interfere with, restrain, or deny the exercise or attempt to exercise any right provided" by the FMLA.  29 U.S.C. § 2615(a)(1).[4]

To prevail on an interference claim, a plaintiff must show Defendants interfered with a FMLA right to medical leave or to reinstatement following FMLA leave.  *Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). Plaintiff must show: "(1) [he] was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) [he] was entitled to leave under the FMLA, (4) [he] gave the employer notice of [his] intention to take leave, and (5) the employer denied the employee FMLA benefits to which [he] was entitled." *Edgar*, 443 F.3d at 507.  An employee who has voluntarily resigned may not maintain a suit for FMLA interference.  *See Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999); *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 523 (6th Cir. 1998).  And whether an employee has in fact resigned is determined by looking to state law.  *Id.*

To make out a prima facie case of workers'-compensation-related retaliatory discharge, a

---

[4] While Plaintiff has made a claim for retaliation pursuant to Tennessee worker's compensation law, he has not made a claim for FMLA retaliation (*See* Complaint, Court File No. 1).

5

plaintiff must show: "(1) [t]he plaintiff was an employee of the defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment." *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993). Once a plaintiff makes out a prima facie case of retaliation, the employer then bears "the burden of showing a legitimate, non-pretextual reason for the employee's discharge." *Id*. at 559. If the employer meets this burden, "the burden shifts back to the employee to prove the employer's explanation is pretextual." *Frizzell v. Mohawk Indus.*, No. M2004-01598-COA-R3-CV, 2006 WL 1328773, *3 (Tenn. Ct. App. May 15, 2006).

Central to Defendant's motion for summary judgment on both claims is Defendant's claim that Plaintiff voluntarily quit. If the undisputed evidence shows Plaintiff voluntarily quit, then both claims would fail as a matter of law because he would not be an eligible employee under FMLA and would not have been terminated by Defendant. Thus, he could not make out either prima facie case. Before the Court proceeds further, the Court must determine whether there is evidence in the record from which a reasonable jury could find that the Plaintiff did not voluntarily resign.

As noted above, under FMLA whether an employee has in fact voluntarily resigned is a question of state law. Similarly, whether an employee has voluntarily resigned for the purposes of the retaliation claim would also be determined by looking to Tennessee law. Under Tennessee law an employee's failure to take necessary and reasonable steps to protect his employment is treated as a voluntary resignation. *McPherson v. Stokes*, 954 S.W.2d 749, 751 (Tenn. Ct. App. 1997). In *McPherson v. Stokes* for example, the plaintiff and former employee, McPherson,

6

requested to extend a previously granted leave of absence to handle an ongoing legal dispute and personal business. His employer, Saturn, denied the request, and when McPherson failed to report for work, Saturn processed his termination as a voluntary quit. Based on these facts, an administrative panel affirmed the denial of unemployment benefits holding that McPherson's failure to return constituted a voluntary resignation. The Tennessee Court of Appeals affirmed this holding noting that "Mr. McPherson unilaterally decided to extend his leave when he knew that Saturn expected him to return to work." *Id*. at 752.

Similarly, in *Practical Ventures LLC v. Neely*, an employee, Danyelle McCullough was suspended after her employer became suspicious that she was falsifying customer loans. No. W2013-00673-COA-R3CV, 2014 WL 2809246 (Tenn. Ct. App. June 19, 2014). When her boss informed her of the suspension, McCullough retorted that she was planning on quitting anyway. After that initial conversation, she made no effort to comply with the investigation, explain the problems, or even return the keys to the store as her employer had requested. On this basis, and citing *McPherson*, the Tennessee Court of Appeals found that she had voluntarily quit because she did not "'take all necessary and reasonable steps to protect . . . her employment.'" *Id*. at 12 (quoting *McPherson*, 954 S.W.2d at 751).

Regardless of the dispute over the content of the conversations between Plaintiff and Jennings and Plaintiff and Green, it is undisputed that Tackett told Plaintiff's live-in girlfriend that Plaintiff had voluntarily quit. And Plaintiff admits that she passed this information along to him (Court File No. 12-1, Pl. Dep. 154). If this was a misunderstanding, it would have been reasonable for Plaintiff to contact someone within Defendant's organization to correct this misunderstanding. Yet, it is also undisputed that neither Plaintiff nor the girlfriend contacted any member of Defendant's organization again. (Court File No. 12-19, Tackett Dep. p. 60, Court

7

File No. 12-35, Gilson Dep. p. 17). Regardless of Plaintiff's subjective intent, or even the understanding of Jennings, the failure to take this reasonable step to preserve his employment constitutes a voluntary resignation according to Tennessee law. Plaintiff was on notice that Defendant's understanding was that he had resigned. Like the employee in *McPherson*, Plaintiff was effectively on notice that, absent further communication, his employer considered him to have voluntarily resigned. An employee in Plaintiff's situation faced with what he argues was an erroneous determination is expected to make some proactive effort to correct this misunderstanding rather than waiting and filing a lawsuit after the parties have moved past the point where any misunderstanding could be corrected. No reasonable jury could decide on the basis of the evidence presented that Plaintiff took "necessary and reasonable steps to protect his . . . employment." *McPherson*, 954 S.W.2d at 751.

Plaintiff is correct that an employer does have a responsibility to inquire further whether leave is potentially FMLA qualifying but that duty is only triggered once the employee has provided sufficient notice of an FMLA claim. *Miles v. Nashville Elec. Serv.*, 525 F. App'x 382, 386 (6th Cir. 2013). Here, Tackett informed Gilson that Plaintiff had voluntarily quit and neither Plaintiff nor Gilson ever disputed that. Under these circumstances, Defendant was under no duty to inquire further whether he did in fact quit. Defendant had no reason to inquire further.

Because these dispositive facts are undisputed, Defendant is entitled to summary judgment on both the FMLA claim and the worker's compensation retaliation claim. Both of these claims depend on Plaintiff showing that he did not voluntarily quit. Because he failed to meet his burden of production on this issue, Defendant is entitled to summary judgment.

IV. **CONCLUSION**

For the above reasons, the Court will **GRANT** Defendants' motion for summary

judgment (Court File No. 11).  There being no other issues in this case, the Court **DIRECTS** the Clerk of Court to **CLOSE** this case.

**An order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**